IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAXWELL E. TURNER,                                      CV. 07-6341-MA

        Plaintiff,                                OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

Alan Stuart Graf, P.C.
P.O. Box 98
Summertown, Tennessee 38483

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon
ADRIAN BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97404-2902

RICHARD M. RODRIGUEZ
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Maxwell E. Turner seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons that follow, I REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings.

### FACTUAL BACKGROUND

Plaintiff alleges disability beginning March 22, 2004, due to bipolar disorder, degenerative disc disease, fibromyalgia, epicondylitis, and carpal tunnel syndrome. Plaintiff has a history of alcohol and substance abuse. Plaintiff was 45 years old at the time of the hearing and has attended some college. Plaintiff's past relevant work was in food preparation.

### THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts

to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 22, 2004, his amended alleged onset of disability.  See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  bipolar disorder, history of polysubstance abuse, degenerative disc disease, fibromyalgia, carpal tunnel syndrome, and epicondylitis.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform medium exertion work activities.  The ALJ also determined that plaintiff is restricted to simple tasks, with limited public contact, and that plaintiff is not able to repetitively push and pull or repetitively forcefully grip with his hands.  See 20 C.F.R. §§ 404.1527, 404.1529. 416.927, 416.929.

At step four, the ALJ found plaintiff capable of performing his past relevant work (PRW) as a short order cook and fast food worker.  <u>See</u> 20 C.F.R. §§ 404.1565, 416.965.  However, due to an ambiguity in the vocational expert's testimony, the ALJ made alternative findings under step five.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff can perform.  <u>See</u> 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.  Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Act.

<u>**ISSUES ON REVIEW**</u>

Plaintiff contends that the ALJ erroneously rejected the opinions of his treating physicians and failed to conduct a proper drug and alcohol analysis.  Plaintiff also contends that the treating physician's opinions should be credited as true and disability benefits awarded.

<u>**STANDARD OF REVIEW**</u>

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id.    The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).   The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.   Andrews, 53 F.3d at 1039-40.   If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

I.    **Plaintiff's Treating Physicians.**

The opinion of a treating physician "as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the record." Edlund, 253 F.3d at 1157.   "Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontradicted." Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).   Physicians with the most significant clinical relationship with the claimant generally are entitled to more weight than those physicians with lesser relationships. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008).   The ALJ may reject the opinion of a treating

5 - OPINION AND ORDER

physician in favor of the conflicting opinion of examining
physicians by providing "specific and legitimate reasons,
supported by substantial evidence in the record" for doing so.
Lester v. Chater, 81 F.3d 821, 834, cert. denied, 531 U.S. 1038
(2000).

According to plaintiff, the ALJ failed to provide legally
sufficient reasons for rejecting the opinions of his treating
physicians and therapists, who consistently opined that
plaintiff's bipolar disorder was disabling.  Plaintiff argues
that these opinions should be credited as true and benefits
awarded.

    A.   <u>Dr. Thomson</u>

Dr. Bruce E. Thomson, M.D., plaintiff's treating physician
of ten years, wrote a December 5, 2006 letter in support of
plaintiff's application for disability benefits in which he
stated that he had treated plaintiff primarily for hyperlipidemia
and bipolar disorder.  According to Dr. Thomson, plaintiff's
bipolar disorder has not been optimally treated, and his anxiety
and depression limit his ability to function in a work setting.
Dr. Thomson opined that he did not believe that plaintiff could
maintain a regular work schedule of 40 hours per week without
excessive absences.

According to the ALJ, Dr. Thomson's disability opinion is
inconsistent with his own prior medical records, not supported by

the record as a whole, and based on plaintiff's inconsistent self-reports. (Tr. 29.)

Having reviewed Dr. Thomson's records carefully, I conclude that the ALJ's proffered reasons for rejecting Dr. Thomson's opinion are neither clear nor convincing. Here, the ALJ rejected Dr. Thomson's 2006 opinion that plaintiff was disabled due to his bipolar disorder because it was inconsistent with a June 4, 2003 opinion and a June 2, 2005 statement that plaintiff's bipolar disorder was relatively stable when he was compliant with Trileptal. (Tr. 525, 877.)[1]

The June 2, 2005 record indicates that although Dr. Thomson did state that plaintiff had been relatively stable on Trileptal in the past, Dr. Thomson was now concerned because plaintiff's Trileptal "is no longer available to him on the patient assistance plan." (Tr. 877.) Dr. Thomson further discussed the need to find a medication that would work in controlling plaintiff's bipolar disorder, and discussed other medications that plaintiff would not consider due to previous severe side effects. (Id.)

---

[1]Dr. Thomson wrote a letter dated June 4, 2003 in support of a prior closed period of disability opining that plaintiff was disabled due to fibromyalgia which would cause flare ups, leading to excessive absences. Dr. Thomson also stated that plaintiff's manic depressive disorder was "reasonably well controlled" with Trileptal at that time. (Tr. 525.)

Additionally, a review of Dr. Thomson's records shows that although plaintiff may have been relatively stable on Trileptal, plaintiff's bipolar disorder was not completely controlled with medication and appears to have worsened since 2003. For instance, Dr. Thomson's records dated January 4, 2005, show that plaintiff reported having difficulties for the previous two months and that he had attempted suicide some two weeks prior on December 16, 2004. During that visit, plaintiff reported to Dr. Thomson that he had been taking Trileptal. Dr. Thomson noted that plaintiff needed additional psychiatric help at that time. (Tr. 718.) In light of these facts, I find no inconsistency worthy of discrediting Dr. Thomson's 2006 opinion.

As the ALJ noted, there is evidence that plaintiff had relapsed into using drugs and alcohol. But contrary to the ALJ's assertion, a careful review of Dr. Thomson's records shows that plaintiff's relapse may not be the only reason why plaintiff stopped taking Trileptal.

The ALJ also rejected Dr. Thomson's opinion as inconsistent because Dr. Thomson failed to discuss any of plaintiff's physical impairments in his December 5, 2006 letter. The ALJ noted that Dr. Thomson had identified fibromyalgia as a basis for stating that plaintiff was disabled in 2003. However, Dr. Thomson's failure to discuss fibromyalgia does not detract from his opinion that plaintiff's bipolar disorder was disabling in 2006. See

8 - OPINION AND ORDER

Kittleson v. Astrue, 533 F.Supp.2d 1100, 1118 (D. Or. 2007)(finding ALJ's rejection of treating physician's PTSD "diagnosis" to be without support where disability was not premised on PTSD).  Additionally, the ALJ identifies no inconsistent self-reports by plaintiff with respect to Dr. Thomson to support the rejection of the doctor's opinion.

The ALJ's conclusion that Dr. Thomson's opinion is not supported by the record as a whole also is not supported by substantial evidence.  A review of the entire record indicates that plaintiff's bipolar disorder was no longer being well controlled in 2006.  To be sure, plaintiff's treating physicians and therapists concurred in plaintiff's bipolar diagnosis and that it impaired his ability to function. (See discussion of Dr. Morton and Mr. Morris below.)  To be sure, the ALJ identifies no contradictory medical authority for the conclusion that plaintiff's bipolar disorder is not disabling.  The only evidence that seemingly would support the ALJ's conclusion that plaintiff's bipolar disorder was not disabling is found in a Mental Residual Functional Capacity assessment from a reviewing doctor, who never examined the plaintiff and which the ALJ does not discuss. (See Tr. 792.)  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)("The opinion of a nonexamining

medical advisor cannot by itself constitute substantial evidence
that justifies the rejection of the opinion of an examining or
treating physician.")  Dr. Thomson's opinion is well supported
and is not contradicted by substantial evidence in the record.
Because each of the bases for rejecting Dr. Thomson's opinion
fails, I conclude the ALJ should have given his opinion
controlling weight.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th
Cir. 1996)(reasons for rejecting treating physician's opinion
were not supported by substantial evidence).

B.   Dr. Morton

     Another of plaintiff's treating physicians, Dr. Craig
Morton, Psy.D., submitted a letter in support of plaintiff's
disability application dated December 15, 2006.  In that letter,
Dr. Morton stated that plaintiff suffered from several
debilitating symptoms, including "suicidal ideation, depressed
mood alternating with periods of mania, memory loss, poor
concentration, panic attacks, anger, restlessness, and low
energy." (Tr. 851.)  Dr. Morton opined that these symptoms limit
plaintiff's ability to function in a work setting, and that
plaintiff's panic attacks and anger limit his ability to interact
with others, and that his poor memory, concentration, and low
energy would limit his ability to work on his own.

The ALJ rejected Dr. Morton's opinion because it is based on inconsistent self-reports and is not supported by the record as a whole.

As the Commissioner correctly notes, a physician's opinion of disability premised on a claimant's own statements may be disregarded where those complaints have been properly discounted. Morgan, 169 F.3d at 602.  In this case, however, the alleged self-reported inconsistency to Dr. Morton identified by the ALJ is not supported by the record.  The ALJ found plaintiff's report to Dr. Morton on August 16, 2006, that he had ruptured a tendon in his right elbow to be inaccurate.  The ALJ determined that "the record is silent as to any tendon rupture in the claimant's right elbow during this time period."  Continuing, the ALJ found that the closest chart notes were from Dr. Dodds on August 25, 2006, who reported no gross deformity to plaintiff's right elbow.

Contrary to the ALJ's conclusion, a review of the record indicates that plaintiff did in fact seek medical treatment for a right elbow injury on July 21, 2006 from Dr. Aaron David, D.D. (Tr. 840.)  Dr. David noted visible swelling and diagnosed acute lateral epicondylitis, but could not rule out a tendon tear, and recommended an ultrasound the following week if his condition did not improve and sent plaintiff home on oral steroids. (Id.) Additionally, plaintiff followed up on his right elbow injury with Dr. Thomson on July 27, 2006, who recommended a surgical

consult with Dr. Dodds.  (Tr. 839.)  Thus, the ALJ's basis for
discrediting Dr. Morton due to plaintiff's inaccurate self-report
is not supported by substantial evidence in record.

As discussed above with respect to Dr. Thomson, after a
careful review, the record as a whole supports Dr. Morton's
conclusion that plaintiff's bipolar disorder is disabling.  Dr.
Morton's opinion is well supported and not inconsistent with
substantial evidence in the record.  Accordingly, the ALJ erred
in rejecting Dr. Morton's opinion.  Edlund, 253 F.3d at 1159-60.

C.   Mr. Morris, LFMT

John Morris, Licensed Family and Marriage Therapist, treated
plaintiff from November 2004 to January 2005.[2]  Mr. Morris stated
that plaintiff has a significant bipolar mood disorder in a
letter dated March 1, 2005:

> [w]hen his mood is stable and his medications
> are working well for him he is fine and
> functions well with work related mental
> activities.  However, when he becomes
> unstable in his mood due to his disability he
> has significant problems with understanding
> and memory, sustained concentration and
> persistence.  His social interactions become
> impaired and his adaptability decreases to
> where he can hardly function. (Tr. 756.)

---

[2]As a licensed clinical social worker, Mr. Morris is not an
"acceptable medical source," and as such his opinion cannot
establish the existence of a medically determinable impairment or
provide a medical opinion.  See, e.g., 20 C.F.R. §§ 404.1513(a),
404.1527(a)(2).  However, his opinion is important to evaluating
the "severity and functional effects" of plaintiff's bipolar
disorder.  SSR 06-03p.

The ALJ partially credited Mr. Morris's opinion.  The ALJ found that plaintiff's self-reporting to Mr. Morris was unreliable because plaintiff failed to discuss with him his physical problems of elbow epicondlyitis and carpal tunnel syndrome, despite that his physical problems appeared significant when reported to other physicians.  The ALJ was perplexed as to why Mr. Morris's March 1, 2005 letter failed to include any diagnosis of alcoholism, given that plaintiff missed an appointment with Mr. Morris due to his alcohol abuse.  The ALJ noted that Mr. Morris assigned a GAF score of 50, indicating serious problems.  The ALJ found that "[o]n January 21, 2005, Mr. Morris terminated the therapy reporting that [plaintiff] was stable because he was complying with his medications."

The ALJ credited Mr. Morris's opinion to the extent that it supports the ALJ's conclusion that when medicated, "and not abusing substances [plaintiff's] symptoms are controlled. However, when he is noncompliant and returns to abusing alcohol or drugs, his symptoms become uncontrollable."  (Tr. 29.)

Plaintiff argues that the ALJ misinterprets Mr. Morris's opinion.  I agree.  Mr. Morris did not opine that when plaintiff is compliant and not abusing drugs or alcohol, he is fine. Likewise, Mr. Morris did not state that it is plaintiff's noncompliance with his medications that render him unable to function.  Contrary to the Commissioner's contention, the ALJ's

interpretation is not entitled to deference.  See Lewis v. Apfel, 236 F.3d 503, 518 (9th Cir. 2001)(record did not support ALJ's inference); cf. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir., 2005)(where evidence is entitled to more than one rational interpretation, the ALJ's decision must be upheld).

Mr. Morris's opinion that plaintiff's bipolar disorder impaired his ability to function and had worsened in 2005 is bolstered by the opinions of Drs. Thomson and Morton.  Contrary to the ALJ's determination, plaintiff's bipolar disorder is not completely controlled by medication as demonstrated by Dr. Thomson's January 2005 record in which plaintiff reported difficulties and a suicide attempt while on his medication. Additionally, it is unclear from the record whether Trileptal, the medication that seemingly worked the best for him, is still available to plaintiff.  Plaintiff is being treated with Tegretol, which as Dr. Rob Nebeker, M.D., noted in October 2006, was not effectively controlling plaintiff's bipolar disorder. (Tr. 849.)

The ALJ has not identified clear and convincing reasons for rejecting Mr. Morris's opinion.  The ALJ discredited Mr. Morris's opinion in part because it was based on plaintiff's failure to discuss his physical problems with his mental health care provider.  However, Mr. Morris's opinion should not be discounted because plaintiff chose not to share physical problems that were

14 - OPINION AND ORDER

beyond his area of expertise, especially when those problems were being adequately address by other doctors.

The ALJ also noted that Mr. Morris's therapy was discontinued because plaintiff was stable and taking his medication. But, a review of Mr. Morris's notes indicates that the therapy ended, at least in part, because plaintiff's insurance would not pay for additional therapy. (Tr. 757.)

The ALJ also discredited Mr. Morris' opinion because he did not list an alcoholism diagnosis in the March 2005 letter. But notes from Mr. Morris indicate that plaintiff was forthcoming with Mr. Morris about his history of substance abuse and then recent relapse. (Tr. 766.) Although the failure to list a diagnosis may be a reason for giving the opinion less weight, it is not, by itself, a sufficient basis upon which to reject Mr. Morris's opinion.

D.   Dr. Wagener

Dr. Mark Wagener Ph.D., an examining physician, conducted a psychodiagnostic evaluation of plaintiff and submitted a report dated October 14, 2004. Plaintiff's brother was present and participated in the evaluation. In that report, Dr. Wagener diagnosed plaintiff with bipolar disorder and panic disorder (provisionally). Dr. Wagener opined that plaintiff was depressed and had intense underlying anger, and that here was a high likelihood of clashes in a structured work setting. Dr. Wagener

also stated that plaintiff did not appear to be exaggerating symptoms.

The ALJ gave the opinion of Dr. Wagener little weight because it was based on the inaccurate self-reports of plaintiff. Plaintiff reported to Dr. Wagener that his recent hospitalization was for a panic attack, but as the ALJ correctly noted, plaintiff's emergency room records indicate that he had not taken his bipolar medication and used methamphetamine and alcohol, triggering his panic-like symptoms. Plaintiff and his brother inaccurately reported to Dr. Wagener that plaintiff's bipolar disorder had not been well controlled in the past 12 years. As the ALJ noted, plaintiff's report was inconsistent with Dr. Thomson's 2003 opinion that plaintiff's medication was controlling his bipolar symptoms at that time. The ALJ also noted that plaintiff denied using drugs and alcohol in the evaluation with Dr. Wagener, which was inconsistent with other evidence in the record. The ALJ's finding with respect to Dr. Wagener's opinion is supported by substantial evidence in the record. Accordingly, I find no error with the ALJ's treatment of it. Morgan, 169 F.3d at 602 (a physician's opinion premised on a claimant's statements may be disregarded where those complaints have been properly disregarded).

    E.    Mr. Rethlefsen

    Mr. Charles Rethlefsen, MSW, LSCW, and examining therapist,
conducted an evaluation of plaintiff on April 25, 2006, and
offered no opinion of plaintiff's ability to work.  Mr.
Rethlefsen diagnosed plaintiff with bipolar disorder,
agoraphobia, and panic disorder.  Mr. Rethlefsen noted
plaintiff's symptoms of poor concentration, poor memory, problems
processing, and low energy and assigned plaintiff a GAF of 45.
Plaintiff contends the ALJ erroneously evaluated the medical
evidence in Mr. Rethlefsen's records.

    The ALJ accorded that GAF little weight because plaintiff's
reports to Mr. Rethlefsen were inconsistent.  According to the
ALJ, plaintiff failed to report a suicide attempt to Mr.
Rethlefsen in 2004, and failed to report to Mr. Rethlefsen about
his past history of drug abuse.  The ALJ's findings are supported
by substantial evidence and I find no error in the ALJ's
treatment of Mr. Rethlefsen's records.  Morgan, 169 F.3d at 602.

**II.  Physician's Opinions Should Be Credited as True.**

    "'[W]here the Commissioner fails to provide adequate reasons
for rejecting the opinion of a treating or examining physician,
we credit that opinion "as a matter of law."'"  Harman v. Apfel,
211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038
(2000)(quoting Lester v. Chater, 81 F.3d at 834); see also Smolen
v. Chater, 80 F.3d at 1292.  The Court should grant an immediate

award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. <u>Harman</u>, 211 F.3d at 1178. Where it is not clear the ALJ is required to award benefits if the improperly rejected evidence is credited, the court has discretion whether to credit the evidence. <u>Connett v. Barnhart</u>, 340 F.3d at 876.

The ALJ improperly rejected the opinions of Drs. Thomson and Morton, and Mr. Morris and those opinions should be credited as true under the first <u>Harman</u> factor. There is also sufficient evidence in the record to satisfy the second and third <u>Harman</u> factors. Dr. Thomson opined that plaintiff is unable to work without excessive absences. Dr. Morton opined that plaintiff cannot maintain sufficient pace to work outside of his home. At the hearing, plaintiff's attorney asked the Vocational Expert (VE) whether plaintiff could perform competitive work if the evidence established that plaintiff had deficiencies in concentration, could not maintain an appropriate pace, and would be absent two days a month or more on average. The VE responded that with absences at that level, competitive work would not be sustained. (Tr. 1097.) Thus, there is sufficient evidence in

the record to make a disability determination under the initial
five step inquiry.

However, the case cannot be remanded for an immediate award
of benefits because there is evidence of plaintiff's drug and
alcohol use.  "A finding of 'disabled' under the five step
inquiry does not automatically qualify a claimant for disability
benefits."  Bustamonte v. Massanari, 262 F.3d 949, 954 (9th Cir.
2001).  If alcoholism or drug addiction is a contributing factor
to the disability determination, a claimant may not receive
disability benefits.  42 U.S.C. § 423(d)(2)(c); 20 C.F.R. §§
404.1535, 416.935; Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.
2007), cert. denied, 128 S. Ct. 1068 (2008).  "[A]n ALJ must
first conduct the five step inquiry without separating out the
impact of alcoholism or drug addiction."  Bustamonte, 262 F.3d at
955.  If the ALJ finds the claimant disabled, and there is
medical evidence of drug addiction or alcoholism, then the ALJ
must proceed with a drug and alcohol abuse analysis "by
determining which of the claimant's disabling limitations would
remain if the claimant stopped using drugs or alcohol."  Parra,
481 F.3d 747; 20 C.F.R. §§ 404.1535(b), 416.935(b).

Because the ALJ concluded that plaintiff was not disabled,
the ALJ did not proceed with a drug and alcohol analysis.[3]  Thus,

_____

[3]Because I am reversing the ALJ's disability determination
and am remanding for further development and a drug and alcohol

there is insufficient evidence in the record for this court to determine whether plaintiff's drug and/or alcohol abuse is a contributing factor in plaintiff's disability.  On remand, I am instructing the ALJ to further develop the record with respect to the materiality of plaintiff's alcohol and/or drug abuse.  The ALJ is instructed to make further inquiry of plaintiff's treating physicians, Drs. Thomson and Morton, as well as any other current treating physicians and therapists, as to whether plaintiff would remain disabled by his bipolar disorder if he discontinued using drugs or alcohol.  After further developing the record, the ALJ must then proceed to conduct a proper drug and alcohol analysis under the requirements of this circuit.

<u>**CONCLUSION**</u>

For these reasons, the Commissioner's decision denying benefits to plaintiff is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _16  day of APRIL, 2009.


_/s/  Malcolm F. Marsh_____

Malcolm F. Marsh
United States District Judge

---

analysis, discussion of plaintiff's issues relating to treatment of the drug and alcohol evidence in the ALJ's decision would not be useful.

20 - OPINION AND ORDER